Anthony SUMMERS

v.

UNITED STATES DEPARTMENT OF JUSTICE, Appellant.

James CAMPBELL

v.

UNITED STATES DEPARTMENT OF JUSTICE, Appellant.

Nos. 92–5008, 92–5102.

United States Court of Appeals, District of Columbia Circuit.

Argued May 17, 1993.

Decided July 30, 1993.

Michael J. Ryan, Asst. U.S. Atty., Washington, DC, argued the cause, for appellant. With him on the briefs were Jay B. Stephens, U.S. Atty. at the time the briefs were filed, John D. Bates, R. Craig Lawrence and Michael T. Ambrosino, Asst. U.S. Attys., Washington, DC.

James H. Lesar, Washington, DC, argued the cause, for appellees Anthony Summers and James Campbell.

Before WALD, HENDERSON and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

■ In this consolidated appeal, the Department of Justice ("DOJ") contests two district court rulings that a federal statute, 28 U.S.C. § 1746, requires it to accept, in conjunction with Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, requests, unnotarized, unsworn privacy waivers signed under penalty of perjury. We affirm the district court in one appeal and dismiss the other for lack of jurisdiction.[1]

I.

In September 1990, Anthony Summers submitted a FOIA request to the Federal Bureau of Investigation ("FBI") for documents pertaining to John F. Shaw, Sr. Accompanying Summers' request was a privacy waiver, signed by an individual who identified himself as Shaw, authorizing the release of all such documents. The waiver included all data normally required for such a document, but was not notarized. Instead, it was signed beneath a specific notice that the signer was subjecting himself to penalties for perjury.

In response to Summers' filing, the FBI requested additional information. Most notably, the agency—relying on 28 C.F.R. § 16.41(d)(1), which provides that "a requester must provide with his request an example of his signature, which shall be notarized"—asked Summers to provide Shaw's notarized signature on the privacy waiver. Summers refused, however, on the ground that such a demand violated 28 U.S.C. § 1746, which allows "any matter" that must be established by a "sworn declaration" to be shown "with like force and effect" by an unsworn declaration subscribed to as true under penalty of perjury. Because Summers balked at providing the requested notarization, the FBI denied his FOIA request.

After pursuing administrative remedies, Summers filed suit in district court seeking a declaratory judgment that the DOJ rule requiring notarized signatures violated § 1746. In that forum, the DOJ argued that its regulation was not at odds with § 1746 because that statute allows the use of unsworn, unnotarized declarations only where a federal law or rule requires a party to swear to the *contents* of the statement, not where, as here, the regulation at issue merely requires verification by a notary of the *identity* of the signer of the statement. Since the regula-

---

1. The DOJ asserts that we have jurisdiction under 28 U.S.C. § 1291 to hear both appeals. We are doubtful, however, that there has been a final, appealable order in *Campbell v. United States Department of Justice*, No. 92–5102. The order the DOJ attempts to appeal only granted Campbell's motion to compel the government to accept unnotarized privacy waivers; by its own terms, it did not dispose of other issues remaining in the case. *See Campbell v. United States Department of Justice*, No. 89–3016 (D.D.C. Jan. 21, 1992), slip opinion at 5 (notarization issue "arises out of the larger [Freedom of Information Act] request which is under the jurisdiction of this Court"). Section 1291 grants no authority to review interlocutory orders. *See, e.g., Kappel-*

*mann v. Delta Air Lines, Inc.*, 539 F.2d 165, 167–68 (D.C.Cir.1976) (under § 1291, district court decisions are appealable only if they are final and end the litigation on the merits), *cert. denied*, 429 U.S. 1061, 97 S.Ct. 784, 50 L.Ed.2d 776 (1977); *cf.* FED.R.CIV.P. 54(b) (allowing appeal from an entry of final judgment on some but not all joined claims only upon express certification of district court). Accordingly, we dismiss the *Campbell* appeal. As a practical matter, this course of action can be expected to have little effect on the parties to that case because our decision in *Summers*—which, all sides agree, presents an identical legal question—will be binding precedent in *Campbell*.

tion did not contravene § 1746, the DOJ argued, it should be upheld as a reasonable means of implementing the Privacy Act, 5 U.S.C. § 552a, requirement that agencies guard against unauthorized disclosure of personal information to third parties.

The district court was unconvinced. Finding that § 1746 did apply because its "plain and unambiguous language" "does not admit of [the] distinction" between a statement's content and the identity of its author, the court granted Summers' summary judgment motion. *Summers v. United States Department of Justice*, 776 F.Supp. 575, 577 (D.D.C. 1991). This appeal followed.

## II.

Section 1746 provides:

Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, *any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath or affidavit*, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:

(1) If executed without the United States:

"I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date).

(Signature)."

(2) If executed within the United States, its territories, possessions, or commonwealths:

"I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. , Executed on (date).

(Signature)."

(Emphasis added.) In this court, as in the district court, the DOJ claims that the plain language of this provision supports its argument that Congress intended this statute to apply only where the content of a document is at issue, not where, as under the DOJ regulation, only the identity of a document's author must be verified.[2]

■ We disagree. Although we have found scant case law relevant to this problem, *but cf. Duncan v. Foti*, 828 F.2d 297, 297–98 (5th Cir.1987) (per curiam) (unavailability of notary in prison did not bar inmate from filing FOIA requests because § 1746 provided an alternative to notarization for such requests), the plain language of § 1746 indicates that it applies with full force when identity is in question. Congress has said unambiguously that whenever "any matter" must be "supported, evidenced, established, or proved" by a sworn declaration, an unsworn declaration attested to under penalty of perjury must henceforth be equally acceptable—unless one of the three exceptions mentioned parenthetically in the statutory text is implicated. In common parlance, an

---

**2.** Because the DOJ regulation at issue, 28 C.F.R. § 16.41(d)(1), only requires a *"notarized"* signature it might be argued that it does not require the *"sworn* declaration, verification, certificate, statement, oath or affidavit" necessary to trigger § 1746 (emphasis added to both quotations). *Cf.* BLACK'S LAW DICTIONARY 1060 (6th ed. 1990) (defining a notary public as both "[o]ne who is authorized ... to administer oaths" and one who may "attest to the authenticity of signatures"). But the DOJ's sample "Certification of Identity" form makes clear that the agency contemplates that the person signing the form should attest to her identity under oath. Specifically, the form requires that an individual certify that she is the person named on the privacy waiver and sign her name under oath before a notary.

Additionally, although the language of § 16.41, *see supra* page 571, might suggest that it applies only when a "requester" seeks information about herself, both parties assume that it is applicable here, *i.e.*, where the request includes a third party's authorization for the release of material to a requester. *See* DOJ Brief at 7 n. 4 (arguing that the fact that the FOIA request seeks records from a third party "does not alter the relevant analysis here").

individual's identity—whether manifested by a direct statement (*e.g.,* "I, Jane Doe, declare. . . ."), a signature, or both—is certainly a "matter" that an individual may be called on to "support[ ], evidence[ ], establish[ ], or prove[ ]" in a declaration. *Cf.* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1394 (1976) (defining a "matter" first as "a subject (as a fact, an event or course of events, or a circumstance, situation, or question) of interest or relevance"). Indeed, identity is often among the most important "matters" disclosed in any statement—few, if any, statements are valuable without knowing who made them. (Perhaps for that reason, most declarations begin by fixing the identity of the declarant. *See, e.g.,* Declaration of Linda L. Kloss (submitted by the DOJ with this appeal) ("I, Linda L. Kloss, declare as follows:. . . .")). Since an individual's identity would seem to be a "matter" that FOIA requesters or third parties waiving privacy are asked to establish, the plain language of § 1746 instructs that a person may use an unsworn statement to establish that identity.[3]

Any residual doubt on this question is dispelled when § 1746 is considered in conjunction with 18 U.S.C. § 1621, the general federal perjury statute. The latter provision, as amended to conform to § 1746, states that whenever a person, in a § 1746 declaration, "willfully subscribes as true any material *matter* which he does not believe to be true," 18 U.S.C. § 1621(2) (emphasis added), he is guilty of perjury. As the government conceded at oral argument, a person would quite obviously violate this provision if he knowingly signed someone else's name to a § 1746 declaration. That would only be true, of course, if the signature and, more generally, the identity of the declarant are "material matter[s]" within the meaning of § 1621. Thus, unless the word "matter" is to be given different meanings in these two closely related provisions—an improbable result since § 1621 was amended to include this language at the time Congress enacted § 1746, *see* 90 Stat. 2534, 2534-35 (1976)—a declarant's identity as manifested by his signature must also be a "matter" within the meaning of § 1746.

Finally, we think that our interpretation of § 1746 is sensible because it prevents the creation of a gaping loophole in that provision's effect. If, as the government suggests, § 1746 does not cover the authentication of signatures, an agency could routinely require notarization "merely" as a way of identifying the person making the statement. That course of action would render § 1746 essentially a dead letter and end-run Congress' clear intent of sparing individuals the cost and hassle of notarizing routine submissions. *See* H.R.REP. No. 1616, 94th Cong., 2d Sess. 1 (1976), U.S.Code Cong. & Admin.News 1976, p. 5644 ("The requirement that the person who signs an affidavit must appear before a notary and be sworn can be inconvenient."); 122 CONG.REC. 34447, 34448 (1976) (statement of Senator Tunney) ("The result of this bill is to do away with one of the remaining anachronisms of our law—the requirement that relatively routine documents bear the seal of a notary public.").

In sum, we agree with the district court that § 1746 applies to verification of the identity of the signers of FOIA privacy waivers. We therefore affirm the decision of the district court in *Summers.* For the reasons discussed previously, *see supra* note 1, we dismiss the appeal in *Campbell.*

*So ordered.*

---

**3.** In this regard, we find no significance in the fact that the approved formats for unsworn declarations included at the end of § 1746 require a declarant to state only that the "foregoing"— which would not include the signature—is true and correct. Congress required only that statements be "substantially" in that format.