# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued April 20, 2012           Decided July 27, 2012

No. 11-5145

UNITED STATES OF AMERICA,
APPELLEE

v.

PHILIP MORRIS USA INC., ET AL.,
APPELLANTS

Appeal from the United States District Court
for the District of Columbia
(No. 1:99-cv-02496)

*Miguel A. Estrada* argued the cause for appellants. With him on the briefs were *Amir C. Tayrani*, *Dace C. Martinez*, *Robert F. McDermott*, *Peter J. Biersteker*, *Noel J. Francisco*, *R. Michael Leonard*, *Michael B. Minton*, *Bruce D. Ryder*, *A. Elizabeth Blackwell*, *Beth A. Wilkinson*, and *Thomas J. Frederick*.

*Daniel J. Popeo* and *Richard A. Samp* were on the brief for *amicus curiae* Washington Legal Foundation in support of appellants.

*Sarang Vijay Damle*, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief were *Michael F. Hertz*, Deputy Assistant Attorney General,

and *Mark B. Stern* and *Alisa B. Klein*, Attorneys. *R. Craig Lawrence*, Assistant U.S. Attorney, entered an appearance.

*Katherine A. Meyer* and *Howard M. Crystal* were on the brief for appellees Tobacco Free Kids Action Fund, et al.

Before: SENTELLE, *Chief Judge*, BROWN, *Circuit Judge*, and SILBERMAN, *Senior Circuit Judge*.

Opinion for the Court by *Circuit Judge* BROWN.

BROWN, *Circuit Judge*: In this latest round in the Government's heavyweight bout against the tobacco industry, the defendant cigarette manufacturers challenge the district court's refusal to vacate injunctions imposed in 2009. Because the district court's ruling survives our review, we give this round to the Government.

I

Thirteen years ago, the Government sued several cigarette manufacturers and related industry organizations for civil violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). The suit asserted the defendants had conspired to deceive consumers about the health effects and addictiveness of smoking. It sought injunctive relief and disgorgement of $280 billion in profits under RICO's Section 1964(a). *See* 18 U.S.C. § 1964(a).

On appeal of an interlocutory order, we held Section 1964(a) did not provide a disgorgement remedy. We explained that because the Section only affords the district court with jurisdiction to "prevent and restrain" future RICO violations, the court was "limited to forward-looking remedies." *United States v. Philip Morris USA, Inc.*, 396 F.3d

1190, 1198 (D.C. Cir. 2005). Disgorgement, as "a quintessentially backward-looking remedy," was out. *Id.*

The district court proceeded to conduct a nine-month bench trial, make over 4000 findings of fact, and impose an extensive set of injunctions. The court identified "more than 100 predicate [RICO violations] spanning more than a half-century," and found the defendants' "numerous misstatements and acts of concealment and deception were made intentionally and deliberately . . . as part of a multi-faceted, sophisticated scheme to defraud." *United States v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 1, 909 (D.D.C. 2009) ("Injunction Opinion"). Based on that long history of misconduct, and the defendants' "countless [future] 'opportunities' and temptations to take similar unlawful actions in order to maximize their revenues," the court determined there was "a reasonable likelihood that [d]efendants' RICO violations will continue in most of the areas in which they have committed violations in the past." *Id.* at 909–12. Asserting its authority to "prevent and restrain" the defendants from committing such future RICO violations, 18 U.S.C. § 1964(a), the court prohibited the defendants from making false or deceptive statements about cigarettes, or "conveying any express or implied health message or health descriptor for any cigarette brand." *Id.* at 938. The court also ordered the defendants to issue "corrective statements" in various media outlets about the health effects of smoking, *id.* at 938–41, and disclose certain marketing and sales information to the public and the Department of Justice, *id.* at 941–45.

On appeal, we affirmed all but four discrete aspects of the injunction order and remanded for further proceedings on those narrow issues alone. *See United States v. Philip Morris USA, Inc.*, 566 F.3d 1095 (D.C. Cir. 2009) (per curiam)

("Affirmance Opinion"). We held the district court had jurisdiction to issue the injunctions because it did not clearly err in finding the defendants exhibited a reasonable likelihood of committing future RICO violations. *See id.* at 1131–34. And though we acknowledged that the court's chosen injunctions were "broad," we held that breadth was "warranted to prevent further violations where[, as here,] a proclivity for unlawful conduct has been shown." *Id.* at 1137.

Exactly one month after we issued our opinion, the President signed the Family Smoking Prevention and Tobacco Control Act (the "Tobacco Control Act" or the "Act") into law. *See* Pub. L. No. 111-31, 123 Stat. 1776 (2009). The Act imposed stringent restrictions on the conduct of cigarette manufacturers. It limited marketing by prohibiting distribution of branded merchandise, *id.* § 102, false or misleading labeling, *id.* § 903(a), and claims of reduced risk of harm (such as the use of descriptors like "light" or "mild") without prior approval of the FDA, *id.* § 911. It strengthened warning labels by directing cigarette manufacturers to include one of several textual warnings on every pack. *Id.* § 202(b). And to ensure enforcement, it granted the FDA a hefty budget, *id.* § 919, and the authority to impose monetary penalties, *id.* § 103(c).

The defendants responded by moving to vacate the injunctions on jurisdictional grounds because the Tobacco Control Act's restrictions on their conduct eliminated any "reasonable likelihood" they would commit future RICO violations. Alternatively, they claimed the court should vacate the injunctions out of deference to the FDA's newfound primary jurisdiction over cigarette sales and marketing.

5

The court rejected both arguments and left the injunctions intact. *See United States v. Philip Morris USA, Inc.*, 787 F. Supp. 2d 68 (D.D.C. 2011) ("Vacatur Opinion"). On the jurisdictional argument, it found the defendants were still reasonably likely to commit future RICO violations because: (1) the defendants were not likely to comply with the Tobacco Control Act given their previous disregard for RICO and the Master Settlement Agreement they had entered into with 46 state attorneys general in 1998; (2) the Act "target[ed] different conduct" than the injunctions did; and (3) the defendants' pending lawsuits challenging the Act had resulted in the invalidation of some of its restrictions, and could result in the invalidation of even more restrictions, *id.* at 75–76. On the primary jurisdiction argument, the court chose to retain jurisdiction because several factors—including its relative expertise in RICO cases, and the dissimilarities between the proscriptions of the RICO statute and the requirements of the Tobacco Control Act—weighed against ceding jurisdiction to the FDA. *Id.* at 77–82.

The defendants appealed. We have jurisdiction to entertain their challenge under 28 U.S.C. § 1292(a)(1).

II

The defendants advance the same arguments they advanced below. Their primary argument is that the Tobacco Control Act deprived the district court of jurisdiction by eliminating any reasonable likelihood they would commit future RICO violations. Their fallback argument is that even if the district court retained jurisdiction following the passage of the Act, it should have vacated the injunctions out of deference to the FDA's newly obtained primary jurisdiction. We address those claims in turn.

6

A

RICO's "Section 1964(a) grants district courts jurisdiction 'to prevent and restrain' RICO violations." Affirmance Opinion, 566 F.3d at 1131. Accordingly, the district court only had jurisdiction to maintain its injunctions if it found the defendants "exhibit[ed] a reasonable likelihood of committing future [RICO] violations." *Id.* The court found such a likelihood existed despite the passage of the Tobacco Control Act because the defendants "offer[ed] no facts which would warrant revisiting" the court's pre-Act findings on their proclivity for misconduct. Vacatur Opinion, 787 F. Supp. 2d at 75.

The defendants contend the district court twice applied the wrong legal standard. They argue the court erred first when it refused to vacate the injunctions under a line of cases involving intervening legislation. In those circumstances, courts had "deemed cases moot where a new law [wa]s enacted during the pendency of an appeal and resolve[d] the parties' dispute." *Log Cabin Republicans v. United States*, 658 F.3d 1162, 1166 (9th Cir. 2011) (per curiam).

The intervening legislation in those cases is distinguishable from the Tobacco Control Act because the legislation there made it "impossible for the court to grant any effectual relief whatever." *Cody v. Cox*, 509 F.3d 606, 608 (D.C. Cir. 2007). In *Log Cabin Republicans*, for example, the court could not grant the plaintiffs any effectual relief on their challenge to the "Don't Ask, Don't Tell" policy because Congress subsequently passed a law repealing the policy. *See* 658 F.3d at 1165–66. Similarly, in *Diffenderfer v. Gomez-Colon*, 587 F.3d 445 (1st Cir. 2009), the court could not grant the plaintiffs any effectual relief on their challenge to Puerto Rico's Spanish-only ballots because Puerto Rico subsequently

passed a law requiring the bilingual ballots plaintiffs desired. *Id.* at 450–51. By contrast, the Tobacco Control Act did not make it impossible to grant effectual relief because it did not make it impossible for the defendants to commit future RICO violations; it did not repeal RICO, exempt the defendants from RICO's application, or legislate the defendants out of existence. It simply subjected the defendants "to the comprehensive regulatory oversight of the FDA." Appellants' Br. at 31. The relevant question—as the district court recognized—was whether that oversight made it so difficult for the defendants to commit RICO violations that there was no longer a reasonable likelihood of such violations occurring. *See* Vacatur Opinion, 787 F. Supp. 2d at 75.

The defendants contend the district court made a second error when answering that question. In reaching its conclusion that the defendants "offer[ed] no facts which would warrant revisiting" its earlier finding of reasonable likelihood, the court noted that "'a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.*, 528 U.S. 167, 190 (2000)). The defendants argue the court should not have imposed such a "formidable" burden of proof because their claimed future compliance with RICO was not "voluntary"—it was mandatory under the terms of the Tobacco Control Act.

Of course, that argument assumes the defendants' compliance with the Tobacco Control Act. And in light of the defendants' history of non-compliance with various legal requirements, there was no reason for the district court to make such an assumption. Indeed, the court expressly found the Tobacco Control Act was not likely to produce

compliance when RICO and the Master Settlement Agreement ("MSA") had failed to do so in the past. *See* Vacatur Opinion, 787 F. Supp. 2d at 76. The defendants claim the Tobacco Control Act imposes tougher restrictions and penalties than the MSA did, and is therefore more likely to spur compliance, but the Act does not provide for penalties as sweeping as those available under RICO. If the defendants were not deterred by the possibility of RICO liability, the district court reasonably found the defendants were not likely to be deterred by the Tobacco Control Act either. In light of that finding, it was appropriate for the district court to hold the defendants to the higher standard of proof reserved for claims of mootness based on voluntary compliance.[1]

Even if the district court had found the defendants were likely to comply with the Act, the injunctions would not have been moot. There are significant parts of the injunctive order that the Act does not cover, *see* Appellee's Br. at 26–28, and as the court noted, the injunctions, unlike the Act, are specifically designed to combat racketeering activity, *see* Vacatur Opinion, 787 F. Supp. 2d at 75, and therefore may be enforced differently. Moreover, the scope of the Act itself was unclear when the court ruled because another court had struck down portions of the Act as unconstitutional. *See id.* at 76 (citing *Commonwealth Brands, Inc. v. United States*, 678 F. Supp. 2d 512, 521 (W.D. Ky. 2010)).

---

[1] That finding—that the Tobacco Control Act was unlikely to produce compliance where other laws had failed—also justifies the district court's refusal to vacate the portions of the injunctions that overlapped with certain restrictions in the Act. *See* Appellants' Br at 46–51 (requesting such relief). If the defendants were not likely to comply with those particular restrictions in the Act, those restrictions did not moot the similar provisions in the injunctive order.

In sum, we hold the district court maintained jurisdiction because it applied the correct legal standard, and did not clearly err in finding the defendants still exhibited a reasonable likelihood of committing future RICO violations. *See* Affirmance Opinion, 566 F.3d at 1131.

B

The defendants' primary jurisdiction argument fares no better. When adjudicating a claim would "require[] the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body," the primary jurisdiction doctrine permits a court to suspend the judicial process "pending referral of such issues to the administrative body for its view." *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956); *see also Reiter v. Cooper*, 507 U.S. 258, 268 (1993). The district court found "this case d[id] not present the appropriate circumstances for invocation of the primary jurisdiction doctrine." Vacatur Opinion, 787 F. Supp. 2d at 78. We review that ruling for abuse of discretion, *see Nat'l Tel. Coop. Ass'n v. Exxon Mobil Corp.*, 244 F.3d 153, 156 (D.C. Cir. 2001), and find none.

Although "[n]o fixed formula exists for applying the doctrine of primary jurisdiction," some principles emerge from our precedents. *W. Pac. R.R. Co.*, 352 U.S. at 64. "The primary jurisdiction doctrine rests both on a concern for uniform outcomes (which may be defeated if disparate courts resolve regulatory issues inconsistently) . . . and on the advantages of allowing an agency to apply its expert judgment." *Allnet Comm'cn Serv., Inc. v. Nat'l Exchange Carrier Ass'n*, 965 F.2d 1118, 1120 (D.C. Cir. 1992). Consequently, we have found the primary jurisdiction doctrine applicable when the precise question before the

district court was one within the particular competence of an agency: whether a tariff levied by local exchange carriers complied with FCC regulations, for example, *see id.* at 1120–21, or whether, under FDA regulations, a new drug was "safe and effective for interstate sale," *Israel v. Baxter Labs., Inc.*, 466 F.2d 272, 280 (D.C. Cir. 1972).

The question before the district court here was whether it was still reasonably likely the defendants would commit future RICO violations despite the passage of the Tobacco Control Act. As the district court observed, that question was squarely within its area of expertise; 13 years of litigation, nine months of trial, and 4000 findings of fact surely gave it unique insight into the defendants' tendency to circumvent or ignore the law. *See* Vacatur Opinion, 787 F. Supp. 2d at 79–80. And while the Tobacco Control Act gave the FDA the authority to regulate much of the defendants' conduct, it gave the FDA no particular insight into whether the defendants were likely to comply with those restrictions. That is why courts consistently have refused to invoke the primary jurisdiction doctrine for "claims based upon fraud or deceit"—claims that are "within the conventional competence of courts." *Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio*, 900 F.2d 882, 889 (6th Cir. 1990) (citing *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 305–06 (1976), and *In re Long Distance Telecomm.*, 831 F.2d 627, 633–34 (6th Cir. 1987)).

The defendants attempt to draw support from *Kappelmann v. Delta Air Lines, Inc.*, 539 F.2d 165 (D.C. Cir. 1976). There, shortly after Congress gave the FAA authority to regulate the transportation of hazardous materials, the plaintiff sought an injunction requiring an airline to provide "adequate warning" to passengers about the "presence of a significant amount of radioactive materials" on board a flight.

*Id.* at 168. We affirmed the district court's invocation of the primary jurisdiction doctrine because the requested injunction "would in effect constitute a regulation covering one phase of the interstate transportation of one group of hazardous materials on one airline," and such "determinations [we]re better made on an industry-wide basis in an agency rulemaking proceeding." *Id.* at 171.

Though *Kappelmann* bears a passing resemblance to this case, there are two critical, and ultimately dispositive, differences. First, in *Kappelmann*, we noted "that Congress recognized the need for uniformity of regulation in this area" when it passed the law empowering the FAA to engage in rulemaking. *Id.* at 170. By contrast, when it passed the Tobacco Control Act, Congress was aware of the district court's injunctions, *see* Pub. L. No. 111-31, 123 Stat. 1776, § 2(47)–(49), yet it explicitly stated the Act should not be construed to "affect any action pending in Federal, State, or tribal court," *id.* § 4(a)(2). We can infer from that statement that Congress was not concerned about the district court's injunctions interfering with the proper functioning of the Act.

The second difference is timing. In *Kappelmann*—and in every other case the defendants cite on primary jurisdiction— the court's decision to defer to the agency came near the beginning of the case. That is no coincidence. The primary jurisdiction doctrine is rooted in part in judicial efficiency; if an agency has particular expertise in an area, then invoking the primary jurisdiction doctrine could "enhance court decision-making and efficiency by allowing the court to take advantage of [that] administrative expertise." *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1051 (9th Cir. 2000). Here, the district court has spent over a decade with the case, and has issued expansive injunctions that this Court has largely affirmed. Vacating those injunctions now would

turn the efficiency rationale for the primary jurisdiction doctrine on its head.

## III

The district court did not clearly err when it found the defendants were reasonably likely to commit future RICO violations despite the passage of the Tobacco Control Act. Nor did the court abuse its discretion when it refused to vacate its injunctions under the primary jurisdiction doctrine. Accordingly, the district court's denial of the defendants' motion to vacate the injunction is

*Affirmed*.