SPORTS FORM, INC., APPELLANT, *v.* LEROY'S HORSE AND SPORTS PLACE, A NEVADA CORPORATION, RESPONDENT.

No. 21574

January 16, 1992 823 P.2d 901

---

[4]The Honorable Carl J. Christensen, Judge of the Eighth Judicial District Court, was designated by the Governor to sit in place of THE HONORABLE CHARLES E. SPRINGER, Justice. Nev. Const. art. 6, § 4.

[Rehearing denied May 18, 1992]

*Nitz, Walton & Hammer,* Las Vegas, for Appellant.

*Neil J. Beller,* Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

LeRoy's Horse and Sports Place (LeRoy's) is a betting establishment which offers wagering on sports and race events. In order to offer this service, LeRoy's must subscribe, from a licensed disseminator, to either a live audio or visual signal which is transmitted from the point of origin of the event to the race and sports place. Mr. Victor Salerno is the president of LeRoy's.

Sports Form is a licensed disseminator of gaming information. Chuck DiRocco is a principal of Sports Form, Inc.

In 1987, LeRoy's entered into a one-year contract with Sports Form for receipt of the signal. Mr. Salerno failed to make timely payments on the contract, and the signal was terminated. Sports Form subsequently sued LeRoy's for the full price of the contract and prevailed.

On May 18, 1988, Mr. Salerno received a letter from Sports Form inviting him to subscribe to the Chicago/Hawthorne/Arlington signal. The letter emphasized compliance with the "ten day requirement of the Nevada Gaming Commission." On June

13, 1988, Mr. Salerno contacted Mr. DeRenzo, a long-term employee of WINCO/Sports Form, and said that he would like to have the service. He was told that he needed to get a waiver from the Gaming Commission.

Mr. Salerno contacted Dennis Amerine, the designated representative of Mike Rumboltz of the Gaming Control Board, and obtained an oral waiver of the "ten day" rule. He was subsequently informed by Mr. DeRenzo that Mr. DiRocco required the waiver to be in writing. Mr. Salerno obtained a letter from Mr. Amerine which he delivered to Mr. DeRenzo. Despite obtaining a waiver, Sports Form declined to provide the signal, citing LeRoy's history of slow payment.

LeRoy's filed suit in the district court for failure to provide equal access to gaming information. *See* NRS 463.440(1)(a)[1] and NRS 463.460.[2] A jury awarded $13,969.00 in damages. On appeal, appellant contests the existence of a private cause of action under NRS Chapter 463.

In determining whether respondent has a private cause of action under NRS Chapter 463 and, specifically, NRS 463.440(1)(a) and NRS 463.460, it is helpful to look to the Supreme Court case of Cort v. Ash, 422 U.S. 66 (1975).

In *Ash,* the Supreme Court articulated four general factors to be considered in determining whether a private remedy is implicit in a federal statute. Those factors include the following: (1) whether the plaintiff was "one of the class for whose special benefit the statute was enacted"; (2) whether there was "any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one"; (3) whether the implication of such a remedy was "consistent with the underlying purposes of the legislative theme"; and (4) whether the cause of action was "one traditionally relegated to state law, in an area basically that concerned the State, so that it would be inappropriate to infer a cause of action based solely on federal law." *Ash,* 422 U.S. at 78.

---

[1]NRS 463.440(1)(a) provides:

(a) All persons licensed to operate and maintain a sports pool or race book are entitled to receive on a fair and equitable basis all information concerning such racing that is being disseminated into and within this state.

[2]NRS 463.460 provides:

463.460 Licensee to furnish information without discrimination. Any disseminator of such information obtaining a license under NRS 463.430 to 463.480, inclusive, shall furnish such information to any licensed race book or sports pool which applies to the disseminator therefor, and the information must be furnished by the disseminator as adequately and efficiently as it is furnished to any other users of the information furnished by the disseminator.

The first three of the *Ash* factors are applicable to this case. We will now consider each factor in turn.

1. *Protected class.*

Appellant contends that the Gaming Control Act, NRS Chapter 463, was not enacted for the special benefit of gaming entities. Appellant cites the case of Dunn v. Tax Commission, 67 Nev. 173, 216 P.2d 985 (1950), which states: "The contention that the purpose of the [gaming licensing] act is to favor or benefit the race track books and not 'for the protection of the public and in the public interest' as recited in section 2 of the act is not tenable." *Id.* at 184, 216 P.2d at 991.

We conclude that *Dunn* is inapplicable to the present case. In *Dunn,* the issue was whether a statute (1949 Nev. Stats. ch. 152) providing for the licensing of the supplying and dissemination of horse racing information was constitutional. *Id.* at 175-176, 216 P.2d at 997.[3] In contrast, the present issue is whether gaming entities are the intended beneficiaries of statutes requiring the "fair and equitable" dissemination of gaming information. *See* NRS 463.440(1)(a); *see also* NRS 463.460.

While the overarching purpose behind the Gaming Control Act is to protect the public, gaming entities are the primary beneficiaries of NRS 463.440(1)(a) and NRS 463.460. NRS 463.440(1)(a) specifically states that it is the public policy of the State that: "All persons licensed to operate and maintain a sports pool or race book are entitled to receive on a fair and equitable basis all information concerning such racing that is being disseminated into and within this state."

2. *Legislative intent.*

Respondent argues that the legislature intended to enforce NRS 463.440(1)(a) and NRS 463.460 through private civil actions. We disagree. Though gaming entities are the primary beneficiaries of these statutes, nothing in NRS 463.440(1)(a) or NRS 463.460 provides them with a private cause of action. Instead, enforcement is governed by NRS 463.141, which states: "The commission or board shall initiate proceedings or actions appropriate to enforce the provisions of this chapter." *See also* NRS 463.310.[4]

---

[3]We determined that the licensing act was proper under the State's police power, since the interest in protecting the public was manifest. *Dunn,* 67 Nev. at 184, 216 P.2d at 997.

[4]NRS 463.310 states, in pertinent part, as follows:

Investigations; disciplinary proceedings; duties of board and commission; powers of commission.

1. The board shall make appropriate investigations:

Clearly, the legislature intended that only the Nevada Gaming Control Board or the Nevada Gaming Commission may bring enforcement actions for violations of NRS 463.440(1)(a) and NRS 463.460.

3. *Legislative scheme.*

Appellant suggests that the legislative scheme of Chapter 463 does not contemplate a private cause of action. We agree.

The doctrine of primary jurisdiction requires that courts should sometimes refrain from exercising jurisdiction so that technical issues can first be determined by an administrative agency. Kapplemann v. Delta Air Lines, 539 F.2d 165, 168-169 (1st Cir. 1976). In *Kapplemann,* the court articulated two policies advanced by the traditional primary jurisdiction doctrine: "(1) the desire for uniformity of regulation and, (2) the need for an initial consideration by a tribunal with specialized knowledge." *Kapplemann,* 539 F.2d at 169.

The continued growth and success of Nevada gaming is dependent upon public confidence and trust that licensed gaming is conducted honestly and competitively. This confidence and trust can only be maintained by strict and uniform regulation of all aspects of the gaming industry. *See* NRS 463.0129. Recognizing this, the legislature vested authority for enforcement of Chapter 463 in the Nevada Gaming Control Board and the Nevada Gaming Commission. Therefore, absent express language to the contrary, the legislative scheme of Chapter 463 precludes a private cause of action.

In sum, under the relevant factors enumerated in *Ash,* we conclude that a private cause of action does not exist under NRS 463.440(1)(a) and NRS 463.460.

Because we find that no private cause of action exists, we need not address appellant's other contentions.

Accordingly, we reverse the judgment of the district court.

MOWBRAY, C. J., SPRINGER and STEFFEN, JJ., and FOLEY, D. J.,[5] concur.

YOUNG, J., dissenting:

Respectfully, I dissent. I would hold that there is a private cause of action under NRS Chapter 463.

---

(a) To determine whether there has been any violation of this chapter or chapter 464 or 465 of NRS or any regulations adopted thereunder.

[5]The Honorable Thomas A. Foley, Judge of the Eighth Judicial District Court, was designated by the Governor to sit in place of THE HONORABLE ROBERT E. ROSE, Justice. Nev. Const. art. 6, § 4.

The majority concedes that the purpose of NRS 463.440(1)(a) and NRS 463.460 is to benefit gaming entities. Clearly, NRS 463.440(1)(a) and NRS 463.460 create a right in favor of race books. Race books are entitled to receive all information concerning racing which is being disseminated in Nevada. NRS 463.440(1)(a). The information is to be furnished to any race book which applies for it, and the disseminator may not discriminate against any applicant. NRS 463.460. In order to give NRS 463.460 meaning, a private cause of action must be afforded to those gaming entities which are denied the rights granted to them by statute.

The majority concedes that gaming entities are the primary beneficiaries of NRS 463.440(1)(a) and NRS 463.460, but goes on to say that nothing in those statutes provides gaming entities with a private cause of action. Where a statute does not expressly create or deny a private cause of action, the legislative history will typically be ambiguous or silent on the issue. Cannon v. University of Chicago, 441 U.S. 677, 694 (1978). "Therefore, in situations such as the present one 'in which it is clear that [the statute] has granted a class of persons certain rights, it is not necessary to show an intention to *create* a private cause of action . . . .'" *Id.* at 694 (quoting Cort v. Ash, 422 U.S. 66, 82 (1975)) (emphasis in original.) No private remedy should be implied if it is contrary to the underlying purpose of the legislation. *Cannon,* 441 U.S. at 703. However, when a private cause of action is helpful to accomplish the statutory purpose, the court should be receptive to allowing the remedy. *Id.* Affording LeRoy's a private cause of action furthers the legislative intent to protect gaming entities from denial of racing information being disseminated in the State of Nevada.

The majority limits LeRoy's remedy to enforcement of the statute through the Nevada Gaming Control Board and the Nevada Gaming Commission. Preclusion of a private cause of action renders a hollow victory to LeRoy's, which was denied the rights afforded it by statute but which is not entitled to damages for that denial. Sports Form is merely slapped on the wrist for discriminating against LeRoy's in violation of NRS 463.460. If a private cause of action were recognized, it would discourage Sports Form or others from discrimination in the future.

I therefore dissent.