*954
 
 OPINION
 

 By the Court,
 

 Douglas, J.:
 

 This opinion addresses several issues arising in the context of Nevada’s employment law. We primarily focus, however, on three important and novel questions: (1) whether NRS 608.160, which prohibits employers from taking employee tips, implies a private cause of action to enforce its terms; (2) whether, in the event that no private cause of action exists, declaratory relief is nonetheless available to employees who allege that the statute’s terms were violated by an employment policy; and (3) whether those employees asserted a viable breach of contract claim based on the employer’s unilateral modification to the employment policy.
 

 Appellants are table game dealers employed at a Las Vegas, Nevada, casino. In 2006, the casino modified its employment policy to require the dealers to share customer tips with persons in certain lower-level management positions. Appellants, believing that the modified policy violated Nevada labor laws, including NRS 608.160, sought relief in the district court.
 

 The district court determined that no private cause of action existed by which appellants could pursue their claims for statutory violations and concluded that appellants’ at-will employee status precluded any challenge to the employment policy on breach-of-contract grounds. Consequently, the court ruled against the dealers, in favor of the casino. Thereafter, the court denied the casino’s motion for attorney fees under NRS 18.010(2)(b) (frivolous claims). Appellants have appealed from the district court’s written decision ruling in the casino’s favor, and the casino has appealed from the order denying it attorney fees.
 

 After considering the parties’ arguments, we conclude the following. First, the Nevada Labor Commissioner, who is entrusted with the responsibility of enforcing Nevada’s labor laws, generally must administratively hear and decide complaints that arise under those laws. Accordingly, we will imply no private cause of action to enforce NRS 608.160, or the other labor statutes at issue here, in the district courts in the first instance. Second, since declaratory relief is not available when an adequate statutory remedy exists, appellants lacked standing to seek such relief. Third, since appel
 
 *955
 
 lants are at-will employees, the employment terms of whom are generally subject to unilateral prospective modification by the employer, and because as a matter of law they had no enforceable contract concerning the future distribution of their tips, they failed to demonstrate a genuine dispute with respect to whether the employment policy modifications constituted a breach of contract. Accordingly, after determining that the district court did not abuse its discretion in denying attorney fees, we affirm the district court’s decision and order denying attorney fees.
 

 FACTS AND PROCEDURAL HISTORY
 

 Appellants Daniel Baldonado and Joseph Cesarz are employed as table game dealers for respondent Wynn Las Vegas, LLC. According to appellants, they began working in those positions for the Wynn company’s casino, the Wynn Las Vegas, when it first opened for business in April 2005.
 

 Shortly before the casino opened for business, on March 28, 2005, the Wynn issued a toke pooling and distribution policy setting forth the manner in which employee tokes, or tips, would be collected, calculated, and distributed.
 
 [1]
 
 Under the March 28 policy, all table game dealers’ tokes were collected over a 24-hour period and counted by a dealer-elected toke committee. The tokes were then distributed amongst the dealers based on hours worked and accrued vacation and sick time. The March 28 policy provided that any modifications to the toke policy “must be approved by a vote process,” requiring that all suggested amendments be approved by “Table Games Management,” which had authority to veto any suggestion that it felt was not in the Wynn’s best interest, and then by a majority of the voting dealers. Another Wynn policy, the April 13, 2005, policy, generally prohibited managers and supervisors from accepting or receiving any tokes. In the Wynn’s employee handbook, which appellants acknowledged receiving, however, it reserved the right to change, supplement, or eliminate any of its policies.
 

 The next year, in August 2006, the Wynn notified the table game dealers that it was modifying its toke policies to remedy an anomaly that, it claimed, had resulted under the company’s 2005 policies: with tip income, table game dealers earned more compensation than their supervisors. Under the modified policy, which combined the pit manager and floor supervisor positions to create a “casino service team lead” position, each service team lead received a portion of the daily toke pool. “Box persons,” or “craps team leads,” also received a portion of the daily toke pool. The remaining portion was distributed to the dealers. According
 
 *956
 
 to the Wynn, these toke policy modifications decreased table game dealers’ daily toke shares by 10 to 15 percent, resulting in an overall salary reduction. The modified policy was effectuated on September 1, 2006.
 

 Shortly thereafter, appellants instituted a class action against the Wynn, asserting that its actions in reducing their compensation under the modified toke policy violated NRS 608.160 (unlawful for employers to take employee tips), NRS 608.100 (unlawful for employers to require employees to rebate compensation earned and paid), and NRS 613.120 (unlawful for managers and shift bosses to receive gratuities from employees as a condition of the employees’ employment). According to their amended complaint, appellants sought compensatory and punitive damages and any appropriate injunctive or equitable relief not only for the alleged statutory violations, but also for breach of contract, the contractual and tortious breach of the implied covenant of good faith and fair dealing, and in relation to their request for declaratory relief.
 

 Thereafter, appellants moved for partial summary judgment and a preliminary injunction, requesting that the district court declare the Wynn’s modified toke policy void under NRS 608.160 and NRS 613.120, and unenforceable as against public policy. The next day, the Wynn moved to dismiss the complaint or, in the alternative, for summary judgment, maintaining that no private cause of action existed to pursue the statutory violations, since the statutes were enforceable only by the Nevada Labor Commissioner, and that appellants were at-will employees with no contractual relationship on which to base their breach of contract claims. Both motions were opposed.
 

 After hearing the parties’ arguments, the district court entered an order denying appellants’ motion and granting the Wynn’s motion. In its order, the court determined that the particular statutes relied on by appellants provided no private causes of action. The court noted that the Labor Commissioner is charged with enforcing the specified statutes, and thus, it stated, appellants must follow “the administrative process” before seeking relief in the district court. Finally, the court also found that appellants were at-will employees with no written employment contract and, therefore, determined that the Wynn had the right to change its tip-pooling policy.
 

 Appellants have appealed from the district court’s order dismissing their complaint. That appeal was assigned Docket No. 48831.
 
 [2]
 

 
 *957
 
 Meanwhile, the Wynn moved the district court for attorney fees under NRS 18.010(2)(b), contending that appellants had brought and maintained their claims without reasonable grounds. Appellants opposed the motion. The district court, determining that appellants’ claims were not brought or maintained without reasonable grounds, denied the Wynn’s request for attorney fees. The Wynn has appealed from that order, and its appeal was assigned Docket No. 49241.
 

 After briefing was completed in both appeals, the appeals were consolidated. The Transport Workers Union of America and former State Assembly members Donald Mello and Jack Lund Schofield were allowed to file amicus briefs.
 

 DISCUSSION
 

 In resolving these appeals, we first address the issues raised with respect to the district court’s order dismissing appellants’ complaint. In so doing, we examine three general issues: whether NRS 608.160 implies a private cause of action, whether appellants appropriately sought declaratory relief, and whether appellants demonstrated a viable claim for breach of employment contracts. After determining that the district court properly refused to allow those claims to proceed to trial, we turn to the Wynn’s appeal from the district court’s order denying it attorney fees. We conclude that, because appellants’ complaint raised reasonably supportable claims, the court did not abuse its discretion when it disallowed attorney fees.
 

 Appeal from the district court’s order dismissing appellants’ complaint
 

 The parties attached additional materials to the motion to dismiss and related filings in the district court, including affidavits and the employment policies at issue. The district court did not exclude those materials; accordingly, it appears that the motion was treated as one for summary judgment.
 
 [3]
 

 On appeal, we review summary judgment orders de novo.
 
 [4]
 
 Summary judgment in favor of the Wynn was appropriate if, after reviewing the record in the light most favorable to appellants, no genuine issues of material fact remained, entitling the Wynn to judgment as a matter of law.
 
 [5]
 
 Under this standard of review, we consider whether the district court properly granted summary judgment on appellants’ claims for statutory violations, declaratory relief, and breach of contract.
 

 
 *958
 

 Appellants had no private cause of action to enforce NRS 608.160, NRS 608.100, or NRS 613.120 in the district court
 

 In determining whether a private cause of action is implied by the labor statutes at issue, the parties’ arguments and, accordingly, our analysis, focus on NRS 608.160. Because, for this purpose, NRS 608.100 and NRS 613.120 are included within the Labor Commissioner’s authority in the same manner as, and phrased similarly to, NRS 608.160, in that all three statutes deem certain employer conduct unlawful, the following discussion of NRS 608.160 applies equally to those two statutes.
 

 NRS 608.160 prohibits employers from taking their employees’ tips and also from applying employee tips towards the statutory minimum wage, while nevertheless allowing for tip-pooling arrangements:
 

 Taking or making deduction on account of tips or gratuities unlawful; employees may divide tips or gratuities among themselves.
 

 1. It is unlawful for any person to:
 

 (a) Take all or part of any tips or gratuities bestowed upon his employees.
 

 (b) Apply as a credit toward the payment of the statutory minimum hourly wage established by any law of this State any tips or gratuities bestowed upon his employees.
 

 2. Nothing contained in this section shall be construed to prevent such employees from entering into an agreement to divide such tips or gratuities among themselves.
 

 As the parties concede, NRS 608.160 does not expressly mention whether employees may privately enforce its terms; thus, appellants may pursue their claims under that statute only if a private cause of action is implied. Whether a private cause of action can be implied is a question of legislative intent.
 
 [6]
 
 To ascertain the Legislature’s intent in the absence of plain, clear language, we examine the entire statutory scheme, reason, and public policy.
 
 [7]
 
 In so doing, we are guided by three factors originally set forth by the U.S. Supreme Court: (1) whether the plaintiffs are “ ‘of the class for whose [e] special benefit the statute was enacted’ ”; (2) whether the legislative history indicates any intention to create or to deny a private remedy; and (3) whether implying such a remedy is
 
 *959
 
 ‘“consistent with the underlying purposes of the legislative [sch]eme.’ ’ ’
 
 [8]
 

 The three factors are not necessarily entitled to equal weight; the determinative factor is always whether the Legislature intended to create a private judicial remedy.
 
 [9]
 
 Without this intent, the U.S. Supreme Court has stated, “a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.”
 
 [10]
 
 As we have recently reiterated, the absence of an express provision providing for a private cause of action to enforce a statutory right strongly suggests that the Legislature did not intend to create a privately enforceable judicial remedy.
 
 [11]
 

 Here, because the first factor does not clearly favor finding an intent to create or an intent to deny a private remedy,
 
 [12]
 
 and since
 
 *960
 
 under the second factor the legislative history is largely silent,
 
 [13]
 
 we turn to the third factor in resolving this issue — whether a private remedy is consistent with the legislative scheme. We conclude that, in light of the statutory scheme requiring the Labor Commissioner to enforce the labor statutes and the availability of an adequate administrative remedy for those statutes’ violations, the Legislature did not intend to create a parallel private remedy for NRS 608.160 violations.
 

 The statutory scheme contemplates enforcement by the Labor Commissioner
 

 Under the third factor, we consider whether implying a private cause of action to enforce NRS 608.160 is consistent with the purposes underlying NRS Chapter 608 and Nevada’s labor laws in general. Clearly, the labor laws were enacted for the purpose of protecting Nevada employees by regulating employers’ control over certain terms of employment.
 
 [14]
 
 Thus, in
 
 Alford v. Harolds Club,
 
 we approved of a federal district court’s conclusion that NRS 608.160’s purpose is to prevent employers from taking their employees’ tips: “ ‘The evident purpose and proper interpretation of the statute is that it was enacted to prevent the taking of tips by an employer for the benefit of the employer.’ ”
 
 [15]
 
 Although private causes of action arguably could further this purpose, other courts have recognized that implying private remedies when the state leg
 
 *961
 
 islature has already contemplated administrative enforcement could create undesirable inconsistencies.
 
 [16]
 

 In Nevada, the Legislature has entrusted the labor laws’ enforcement to the Labor Commissioner, unless otherwise specified.
 
 [17]
 
 With respect to NRS 608.160, the Legislature has expressly ordered the Labor Commissioner to enforce that statute: NRS 608.180 provides that “[t]he Labor Commissioner or his representative shall cause the provisions of NRS 608.005 to 608.195, inclusive, to be enforced.” The Labor Commissioner may direct the district attorney, the Deputy Labor Commissioner, the Attorney General, or special counsel to ‘ ‘prosecute the action for enforcement according to law.”
 
 [18]
 
 Violators of NRS Chapter 608 are guilty of a misdemeanor and, “[i]n addition to any other remedy or penalty,” subject to an administrative penalty imposed by the Labor Commissioner.
 
 [19]
 

 As other courts have recognized, when an administrative official is expressly charged with enforcing a section of laws, a private cause of action generally cannot be implied.
 
 [20]
 
 Here, the fact that the Legislature has ordered the Labor Commissioner to enforce NRS 608.160 weighs heavily against finding any intent to create a private remedy.
 
 [21]
 

 
 *962
 

 An adequate administrative remedy is available
 

 Despite this strong indication to the contrary, appellants argue that the statutory scheme creates a “readily apparent” private enforcement right. Appellants’ argument is based on the alleged lack of an explicit, nondiscretionary, administrative process by which they might personally obtain relief. In particular, appellants assert that the administrative remedy provided by the labor statutes is inadequate because the decision whether to hear a matter is within the Labor Commissioner’s discretion, and thus, the Labor Commissioner may choose not to decide a complaint.
 

 NRS 607.205 provides that the Labor Commissioner “may conduct” a hearing to resolve labor complaints:
 

 In aid of his enforcement responsibilities under the labor laws of the State of Nevada, the Labor Commissioner or a person designated by him may conduct hearings and issue decisions thereon in the manner set forth in NRS 607.207.
 

 NRS 607.207(1) sets forth where the hearing may be held:
 

 When an enforcement question is presented under any labor law of the State of Nevada, the determination of which is not exclusively vested in another officer, board or commission, the Labor Commissioner or a person designated by him may conduct a hearing in any place convenient to the parties, if practicable, and otherwise in a place chosen by the Labor Commissioner.
 

 Within 30 days after the hearing, the Labor Commissioner must render a written decision setting forth findings of fact and conclusions of law, which must be mailed to the parties.
 
 [22]
 
 The Labor Commissioner’s decision may then be challenged by way of a district court petition for judicial review, and the district court may hold a trial de novo thereupon.
 
 [23]
 
 After the district court renders a decision, any aggrieved party may appeal to this court.
 
 [24]
 

 Appellants’ argument is based on NRS 607.205’s and NRS 607.207’s use of the term “may,” which typically connotes discretion.
 
 [25]
 
 We addressed a similar argument in
 
 Rosequist
 
 v.
 
 Inter
 
 
 *963
 

 national Ass’n of Firefighters.
 

 [26]
 

 In that case, we noted that a statute providing that “‘[t]he [Employee-Management Relations Board] may hear and determine any complaint’ ’ ’ was ambiguous.
 
 [27]
 
 In resolving the ambiguity, we explained that the legislation’s purposes to relieve burdens on the court and to develop and utilize the Board’s expertise meant that the term “may” in that instance was not discretionary — the Board was required to hear labor disputes arising out of NRS Chapter 288.
 
 [28]
 

 Likewise, here, a similar ambiguity exists in NRS 607.205, since the statute could mean either that the Labor Commissioner has discretion in determining whether to hear and decide a complaint or merely that the Labor Commissioner has authority to hold hearings.
 
 [29]
 
 Also, the “may” in NRS 607.207 could grant discretion over whether a hearing is necessary, or only over where the hearing is held. For reasons similar to those set forth in
 
 Rosequist,
 
 we conclude that the labor statutes, including NRS 607.205 and NRS 607.207, require the Labor Commissioner to hear and decide complaints seeking enforcement of the labor laws.
 

 Specifically, the Labor Commissioner is charged with knowing and enforcing the labor laws; these responsibilities acknowledge a special expertise as to those laws.
 
 [30]
 
 Implicit in the Labor Commissioner’s obligation to know and enforce the labor laws is the duty to hear and resolve labor law complaints. As noted, within 30 days from the hearing’s conclusion, the Labor Commissioner must render a written decision resolving the complaint at issue, based on the facts and legal conclusion “developed at the hearing.”
 
 [31]
 
 Indeed, resolving labor law complaints is perhaps one of the Labor Commissioner’s most significant enforcement mechanisms. In this manner, the Labor Commissioner’s expertise is optimized, and the parties then have an opportunity to petition the district court for judicial review and, ultimately, appeal to this court. Accordingly, the Labor Commissioner’s duty to hear and resolve enforcement complaints is not discretionary, and appellants had access to an ade
 
 *964
 
 quate administrative enforcement mechanism, precluding a finding of legislative intent to create a parallel private remedy.
 
 [32]
 

 Thus, appellants have failed to overcome the presumption that no private cause of action was intended.
 
 [33]
 
 As no private remedy is implied under NRS 608.160, appellants had no right to obtain relief in the district court under that statute. As a result, summary judgment in favor of the Wynn was proper.
 

 Declaratory relief was not available to appellants
 

 Appellants briefly argue that even if no private cause of action exists under NRS 608.160 and the other statutes, they had stand
 
 *965
 
 ing to seek declaratory relief under NRS 30.040 to obtain the district court’s interpretation of that statute.
 
 [34]
 
 But although appellants assert that they merely desired the court to interpret NRS 608.160, they also requested that the court apply that interpretation to the Wynn’s modified policy and to grant them injunctive relief and damages under NRS 30.100. Thus, appellants sought more than a mere determination of their rights under a statute — they sought to void the policy altogether and to obtain damages. Such issues are not appropriate for declaratory relief actions when an administrative remedy is provided for by statute.
 
 [35]
 
 Accordingly, the district court properly granted summary judgment to the Wynn on appellants’ request for declaratory relief.
 

 Appellants failed to demonstrate the existence of a genuine issue of material fact regarding their breach of contract claim
 

 Appellants assert that even though they were at-will employees generally subject to termination at any time for any reason,
 
 [36]
 
 the March 28 policy contained two provisions constituting an enforceable written contract concerning conditions of their employment. In particular, appellants point to the two March 28 provisions providing that only the dealers would share tips and that the tip-pooling and distribution policy was subject to modification by majority dealer vote. With the latter provision, they argue, the Wynn relinquished to the dealers its right to change the tip-pooling and distribution policy. Consequently, they contend, when the Wynn
 
 *966
 
 unilaterally modified that policy, it breached the terms of their employment contract.
 

 This court has previously described at-will employment in terms of contract law,
 
 [37]
 
 and we have pointed out that “contractual obligations can be implicit in employer practices and policies and as reflected in employee handbooks.’ ’
 
 [38]
 
 Nonetheless, we also have established that employers may unilaterally modify the terms of an at-will employment arrangement in prospective fashion; the employee’s continued employment constitutes sufficient consideration for the modification.
 
 [39]
 
 In so providing, we recognized that at-will employees have no contractual rights arising from the employment relationship that limit the employer’s ability to prospectively hire and fire employees, and to change the terms of employment. Further, we have noted that employers may prevent implied contractual liability from arising in the first instance by including a disclaimer in their employment handbooks.
 
 [40]
 

 Here, appellants’ breach of contract claim must fail for two reasons. First, as noted, employers may prospectively modify terms of employment. Thus, to the extent that the March 28 policy provisions constituted terms of employment, the Wynn was free to alter those terms with respect to fhture employment periods.
 
 [41]
 
 Second, the Wynn’s employee handbook expressly stated that “any” poli
 
 *967
 
 cies were subject to unilateral modification, and that statement was not contradicted by the March 28 policy provisions. Although appellants contend that the March 28 policy’s voting provision granted the dealers the sole right to change the tip-pooling and distribution policy, nothing therein suggested that the Wynn was relinquishing its right to change the terms of the voting provision itself. Accordingly, the March 28 policy provisions did not, as a matter of law, rise to the level of an enforceable contract with respect to future periods of employment,
 
 [42]
 
 and the district court properly granted summary judgment on appellants’ breach of contract claim.
 
 [43]
 

 The Wynn’s appeal from the district court’s order denying it attorney fees
 

 In its appeal, the Wynn challenges the district court’s order denying its motion for attorney fees under NRS 18.010(2)(b).
 

 This court reviews district court orders refusing to award attorney fees for an abuse of discretion.
 
 [44]
 
 Under NRS 18.010(2)(b), the district court may award attorney fees to a prevailing party when it finds that a claim was frivolous or brought or maintained without reasonable ground or to harass the prevailing party. Determining whether attorney fees should be awarded under NRS 18.010(2)(b)
 
 *968
 
 requires the court to inquire into the actual circumstances of the case, “rather than a hypothetical set of facts favoring plaintiff’s averments.”
 
 [45]
 
 As the Wynn points out, NRS 18.010(2)(b) must be liberally construed in favor of awarding attorney fees whenever appropriate.
 
 [46]
 

 Here, the Wynn asserts that appellants’ claims were brought without reasonable grounds because the labor statutes clearly do not provide for any private cause of action under NRS 608.160, NRS 608.100, or NRS 613.120 and because appellants concededly were at-will employees with no definite employment contract. Moreover, the Wynn points out, appellants were “on notice” of the Labor Commissioner’s opinion that the modified tip-pooling policy did not violate Nevada law, based on a press release that was issued shortly before appellants instituted their district court action. As a result, the Wynn contends that appellants clearly brought their claims without reasonable grounds.
 

 In response, appellants note that the issues raised by their complaint, including whether a cause of action exists under NRS 608.160 and the other labor laws and whether the tip-pooling procedures at issue here were lawful policy modifications, have never been reviewed by this court. Further, they assert that, under the Ninth Circuit’s interpretation of Nevada law,
 
 [47]
 
 they had arguable grounds for asserting a breach of contract claim.
 

 As this opinion illustrates, the law in this matter is complex and was unsettled. Since appellants raised reasonably supportable, if not ultimately successful, arguments, the district court did not abuse its discretion in determining that appellants’ claims were brought with reasonable grounds and in denying the Wynn’s motion for attorney fees.
 
 [48]
 

 CONCLUSION
 

 In Nevada, labor laws are to be enforced by the Labor Commissioner, who generally must hear and decide complaints that
 
 *969
 
 arise under those laws. Accordingly, we can imply no private cause of action to enforce NRS 608.160, NRS 608.100, or NRS 613.120. Further, in light of an available statutory remedy, appellants have no standing to independently seek declaratory relief regarding those statutes’ application. And regarding appellants’ breach of contract claim, they failed to demonstrate a genuine issue of material fact because they failed to show that the March 28 policy constituted unalterable and enforceable terms of employment.
 

 Accordingly, the district court properly granted the Wynn’s motion for summary judgment and denied appellants’ motion for partial summary judgment. Finally, as appellants had reasonable grounds on which to assert their claims, the district court did not abuse its discretion in refusing to award attorney fees. Consequently, we affirm the district court’s summary judgment and order denying attorney fees.
 

 Gibbons, C. J., Maupin, Hardesty, Parraguirre, Cherry and Saitta, JJ., concur.
 

 [1]
 

 The March 28 policy defines a “toke (tip)” as “any money, whether coin or cash extended to an employee in recognition of, or in appreciation for, a job well done.”
 

 [2]
 

 The Wynn asserts that the appellants’ appendix in Docket No. 48331 is deficient because they failed to include all materials required under NRAP 30 and included irrelevant and duplicative materials. Also, the Wynn complains that appellants made unreferenced and incorrect, or improperly cited, factual assertions. As appellants have promptly and adequately addressed these issues, we conclude that sanctions are not warranted.
 

 [3]
 

 NRCP 12(b).
 

 [4]
 

 Wood
 
 v.
 
 Safeway, Inc.,
 
 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005).
 

 [5]
 

 Id.
 

 [6]
 

 Allstate Ins. Co.
 
 v.
 
 Thorpe,
 
 123 Nev. 565, 571, 170 P.3d 989, 993 (2007) (citing
 
 U.S. Design & Constr. v. I.B.E.W. Local 357,
 
 118 Nev. 458, 461, 50 P.3d 170, 172 (2002);
 
 Sports Form v. Leroy's Horse & Sports,
 
 108 Nev. 37, 40-41, 823 P.2d 901, 903 (1992)).
 

 [7]
 

 U.S. Design,
 
 118 Nev. at 461, 50 P.3d at 172.
 

 [8]
 

 Sports Form.,
 
 108 Nev. at 39, 823 P.2d at 902 (quoting
 
 Cort v. Ash,
 
 422 U.S. 66, 78 (1975));
 
 see generally California v. Sierra Club,
 
 451 U.S. 287, 293 (1981) (explaining that, while congressional intent to create a private right of action is dispositive, that intent can often be determined by considering the
 
 Cort
 
 factors).
 

 [9]
 

 See generally Alexander v. Sandoval,
 
 532 U.S. 275, 286 (2001);
 
 Touche Ross & Co. v. Redington,
 
 442 U.S. 560, 575 (1979) (explaining that not all of the
 
 Cort
 
 factors are necessarily entitled to equal weight and that the “central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action”).
 

 [10]
 

 Alexander,
 
 532 U.S. at 286-87;
 
 but see id.
 
 at 287 (noting that the function of common-law courts in implying a cause of action might differ from that of federal tribunals).
 

 [11]
 

 Richardson Constr. v. Clark Cty. Sch. Dist.,
 
 123 Nev. 61, 65, 156 P.3d 21, 23 (2007) (citing
 
 Sports Form,
 
 108 Nev. at 40-41, 823 P.2d at 903);
 
 see also Maldonado
 
 v.
 
 Dominguez,
 
 137 P.3d 1, 7 (1st Cir. 1998) (noting that there is a “strong presumption” against inferring a private cause of action);
 
 Vikco Ins. Services, Inc. v. Ohio Indem.,
 
 82 Cal. Rptr. 2d 442, 447 (Ct. App. 1999) (explaining that, because courts are not to “insert what has been omitted from a statute,” courts will assume that the legislature will make its intent to create a private cause of action clear through direct, understandable, and unmistaken terms);
 
 Provencher
 
 v.
 
 Town of Enfield,
 
 936 A.2d 625, 630 (Conn. 2007) (“[I]t is a rare occasion that [the Connecticut Supreme Court] will be persuaded that the legislature intended to create something as significant as a private right of action but chose not to express such an intent in the statute.”).
 

 [12]
 

 Under the first factor — whether appellants are of the class for whose especial benefit NRS 608.160 was enacted — the inquiry is not whether appellants would benefit from the statute, but rather, whether the Legislature intended to confer a right on employees as a class.
 
 See Sierra Club,
 
 451 U.S. at 294;
 
 Cort,
 
 422 U.S. at 78. Here, instead of directly conferring a right on employees, NRS 608.160(1), like many other NRS Chapter 608 provisions, including NRS 608.100, regulates and focuses on the employer’s (or “any person’s”) conduct. Notably, NRS 608.160 does not entitle each individual employee to the tips and gratuities “bestowed upon” him, since it expressly allows employee tip-sharing agreements. Consequently, while logic portends that the
 
 *960
 
 statute was enacted at least in part to protect employees, it is far less clear from the statutory language that the Legislature intended to confer upon those employees a private remedy.
 
 See Alexander,
 
 532 U.S. at 289 (“Statutes that focus on the person regulated rather than the individuals protected create ‘no implication of an intent to confer rights on a particular class of persons.’ ’ ’ (quoting
 
 Sierra Club,
 
 451 U.S. at 294));
 
 Piper v. Chris-Craft Industries,
 
 430 U.S. 1, 24 (1977) (finding no implied private cause of action in a statute that made it “unlawful” for a broad range of persons to make untrue or deceptive statements in connection with tender offers and solicitations of shareholders with respect to tender offers);
 
 Cort,
 
 422 U.S. at 68 n.l, 85 (finding no implied private cause of action to enforce a statute making it “unlawful” for bank or corporation to make campaign contributions).
 

 [13]
 

 See
 
 Hearing on A.B. 353 Before the Labor and Management Comm., 56th Leg. (Nev., March 9, 1971) (noting that the labor department had experienced difficulty in enforcing the previous statute’s requirement that employers post a notice regarding any tip-taking policy).
 

 [14]
 

 See
 
 NRS 607.110 (providing that the Labor Commissioner “shall inform himself of all laws of the State for the protection of life and limb in any of the industries of the State, all laws regulating the hours of labor,
 
 the
 
 employment of minors, the payment of wages and all other laws enacted for the protection and benefit of employees”).
 

 [15]
 

 99 Nev. 670, 673, 669 P.2d 721, 723 (1983) (quoting
 
 Moen v. Las Vegas International Hotel, Inc.,
 
 402 F. Supp. 157, 160 (D. Nev. 1975)).
 

 [16]
 

 See, e.g., Uhr v. East Greenbush Cent. School Dist.,
 
 720 N.E.2d 886, 890 (N.Y. 1999) (noting that dual enforcement mechanisms may be inconsistent when they are based on different motivations and could produce unequal allocations of benefits due to differences in approach);
 
 Carrube v. New York City Transit Authority,
 
 738 N.Y.S.2d 67, 68 (App. Div. 2002) (recognizing that, when the state’s legislature has contemplated administrative enforcement by the state Labor Commissioner, no private remedy was intended).
 

 [17]
 

 NRS 607.160(1).
 

 [18]
 

 NRS 608.180.
 

 [19]
 

 NRS 608.195.
 

 [20]
 

 See, e.g., Stouch v. Williamson Hospitality Corp.,
 
 22 F. Supp. 2d 431, 433 (E.D. Pa. 1998) (concluding that, because the secretary of labor was charged with enforcing the subchapter at issue, no implied private cause of action existed (citing
 
 Smith v. Cotton Bros. Baking Co., Inc.,
 
 609 F.2d 738 (5th Cir. 1980;
 
 LeVick v. Skaggs Companies, Inc.,
 
 701 F.2d
 
 777
 
 (9th Cir. 1983));
 
 Vikco Ins. Services, Inc. v. Ohio Indem.,
 
 82 Cal. Rptr. 2d 442, 448 (Ct. App. 1999) (noting that, because the California Insurance Commissioner had power to enforce unfair insurance practices statutes, an administrative remedy was provided for and no cause of action needed to be implied);
 
 Carrube,
 
 738 N.Y.S.2d at 68 (recognizing that, when “potent” administrative enforcement mechanisms existed, no private remedy was intended).
 

 [21]
 

 See Matoff v. Brinker Restaurant Corp.,
 
 439 F. Supp. 2d 1035, 1037 (C.D. Cal. 2006) (concluding that no private cause of action could be implied under the California provision corresponding to NRS 608.160 because the Cal
 
 *962
 
 ifornia Department of Industrial Relations was charged with enforcing the statute, which provided for administrative fines payable to the state and, thus, “a remedy other than private damages or restitution”).
 

 [22]
 

 NRS 607.215(1) and (2).
 

 [23]
 

 NRS 607.215(3).
 

 [24]
 

 See
 
 NRAP 3A(b)(l); NRS 233B.150.
 

 [25]
 

 See, e.g., Tarango v. SIIS,
 
 117 Nev. 444, 451 n.20, 25 P.3d 175, 180 n.20 (2001) (“ ‘[I]n statutes, “may” is permissive and “shall” is mandatory unless the statute demands a different construction to carry out the clear intent of the legislature.’” (quoting
 
 S.N.E.A. v. Daines,
 
 108 Nev. 15, 19, 824 P.2d 276, 278 (1992))).
 

 [26]
 

 118 Nev. 444, 49 P.3d 651 (2002),
 
 overruled on other grounds by Allstate Ins. Co.
 
 v.
 
 Thorpe,
 
 123 Nev. 565, 170 P.3d 989 (2007).
 

 [27]
 

 Rosequist,
 
 118 Nev. at 450, 49 P.3d at 655 (quoting NRS 288.110(2) and also citing to NRS 288.280, which provides that any dispute “may” be presented to the Board).
 

 [28]
 

 Id.
 
 at 450-51, 49 P.3d at 655.
 

 [29]
 

 See
 
 NRS 0.025(l)(a) (explaining that when used in the NRS, “may” usually refers to “a right, privilege or power”).
 

 [30]
 

 See, e.g.,
 
 NRS 607.110; NRS 607.160(1).
 

 [31]
 

 NRS 607.215.
 

 [32]
 

 See Allstate Ins. Co. v. Thorpe,
 
 123 Nev. 565, 572, 170 P.3d 989, 994 (2007) (concluding that the existence of a comprehensive administrative scheme regarding the enforcement of NRS Title 57, under which the insurance commissioner has exclusive jurisdiction and is required to determine complaints for enforcement, precludes any private cause of action in the district courts).
 

 [33]
 

 Other considerations also support this conclusion. For instance, no statute even implicitly provides a judicial remedy specifically for NRS 608.160 violations. In contrast, two other statutes in NRS Chapter 608, otherwise enforceable by the Labor Commissioner, expressly recognize a civil enforcement action to recoup unpaid wages: NRS 608.140 (civil actions by employees to recoup unpaid wages) and NRS 608.150 (civil actions by the district attorney to recoup unpaid wages from general contractors). The existence of express civil remedies within the statutory framework of a given set of laws indicates that the Legislature will expressly provide for private civil remedies when it intends that such remedies exist; thus, if the Legislature fails to expressly provide a private remedy, no such remedy should be implied.
 
 See Hamm v. Carson City Nugget,
 
 Inc., 85 Nev. 99, 450 P.2d 358 (1969),
 
 cited in Moen
 
 v.
 
 Las Vegas International Hotel, Inc.,
 
 402 F. Supp. 157, 161 (D. Nev. 1975). Moreover, a federal district court in California has determined that no private cause of action can be implied under a similar provision in the California Labor Code, § 351.
 
 Matoff v. Brinker Restaurant Corp.,
 
 439 F. Supp. 2d 1035, 1037 (C.D. Cal. 2006) (explaining that the allegations could be brought under a different statute generally allowing claims based on unfair business practices).
 

 Thus, although we have considered appellants’ arguments that our holding in
 
 U.S. Design & Construction v. I.B.E.W. Local 357,
 
 118 Nev. 458, 50 P.3d 170 (2002), and the Labor Commissioner’s general authority to pursue civil remedies for “other demands” under NRS 607.160(7) and NRS 607.170(1), as well as other considerations, compel a different conclusion, we disagree. In
 
 U.S. Design,
 
 we interpreted NRS 608.150 as including a private right of action to maintain consistency with NRS 11.209(1), which sets limitations on the rights of employees to sue general contractors for wages, and the legislative history, which reflected a desire to expand the option employees had to recover wages, not to limit them. 118 Nev. at 462, 50 P.3d at 172. Further, a private cause of action to recover unpaid wages is entirely consistent with the express authority under NRS 608.140 to bring private actions for wages unpaid and due. Thus,
 
 U.S. Design
 
 does not mean that a private cause of action necessarily exists here. The Labor Commissioner’s NRS Chapter 607 authority to pursue wage and commission claims on behalf of those people who cannot af
 
 *965
 
 ford counsel is also consistent with NRS 608.140. We decline to impute legislative intent to create a private cause of action to enforce NRS 608.160 solely based on the fact that the Labor Commissioner may pursue claims for “other demands” under NRS Chapter 607.
 

 [34]
 

 NRS 30.040 provides:
 

 Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder.
 

 Appellants do not argue that declaratory relief was appropriate to interpret a contract.
 

 [35]
 

 See Public Service Commission
 
 v.
 
 District Court,
 
 107 Nev. 680, 685, 818 P.2d 396, 399 (1991) (recognizing that declaratory relief is unavailable when a special statutory remedy exists and cannot be used to circumvent statutory avenues of judicial review);
 
 Prudential Ins. Co. v. Ins. Comm’r,
 
 82 Nev. 1, 4-5, 409 P.2d 248, 250 (1966) (explaining that a declaratory relief action is appropriate when a party merely seeks a ruling on the meaning of a statute but is inappropriate when an agency’s discretionary decisions are required).
 

 [36]
 

 See Smith
 
 v.
 
 Cladianos,
 
 104 Nev. 67, 68, 752 P.2d 233, 234 (1988).
 

 [37]
 

 Camco, Inc.
 
 v.
 
 Baker,
 
 113 Nev. 512, 517, 936 P.2d 829, 831-32 (1997);
 
 D’Angelo v. Gardner,
 
 107 Nev. 704, 711-12, 819 P.2d 206, 211 (1991);
 
 Vancheri
 
 v.
 
 GNLV Corp.,
 
 105 Nev. 417, 421, 777 P.2d 366, 369 (1989).
 

 [38]
 

 D’Angelo,
 
 107 Nev. at 714, 819 P.2d at 213 (citing
 
 Southwest Gas Corp. v. Ahmad, 99
 
 Nev. 594, 668 P.2d 261 (1983));
 
 see also Southwest Gas v. Vargas,
 
 111 Nev. 1064, 1071-72, 901 P.2d 693, 697-98 (1995).
 

 [39]
 

 Camco,
 
 113 Nev. 512, 936 P.2d 829;
 
 Ahmad, 99
 
 Nev. 594, 668 P.2d 261.
 

 Typically, after an at-will employee is notified of modifications to the terms of his or her employment, the employee remains free to continue employment or to leave. The employee’s continued employment constitutes acceptance of, and consideration for, what is essentially a new employment arrangement.
 
 Camco,
 
 113 Nev. at 516-18, 936 P.2d at 831-32;
 
 see generally Kauffman v. IBT,
 
 950 A.2d 44 (D.C. 2008) (discussing legal theories underlying modifications to at-will employment terms);
 
 DiGiacinto
 
 v.
 
 Ameriko-Omserv Corp.,
 
 69 Cal. Rptr. 2d 300 (Ct. App. 1997) (same). Accordingly, an employee who has accepted new employment terms by continuing to work for that employer generally has no grounds on which to base a breach of contract claim.
 

 [40]
 

 D'Angelo,
 
 107 Nev. at 708 n.4, 819 P.2d at 209 n.4.
 

 [41]
 

 See also Cotter v. Desert Palace, Inc.,
 
 880 F.2d 1142, 1145 (9th Cir. 1989) (providing that “[a]n employer privileged to terminate an employee at any time necessarily enjoys the lesser privilege of imposing prospective changes in the conditions of employment,” so long as the employer’s decision does not violate express statutory provisions or public policy). While we disagree with
 
 Cotter’s
 
 implication that, in Nevada, employment condition modi
 
 *967
 
 fications that violate state statute or public policy give rise to a breach of contract claim, we otherwise approve of
 
 Cotter’s
 
 statement. Allegations of statutory and public policy violations in the employment context are generally resolvable administratively, as with the allegations concerning the tip-taking statute noted above, or under tort law, as described in
 
 Hansen v. Hurrah’s,
 
 100 Nev. 60, 675 P.2d 394 (1984).
 

 [42]
 

 See Vargas,
 
 111 Nev. at 1071-72, 901 P.2d at 697-98 (citing
 
 D’Angelo,
 
 107 Nev. 704, 819 P.2d 206, for the proposition that an appropriately worded disclaimer can prevent any inference that an employment handbook is part of the employment contract, and quoting
 
 Fleming
 
 v.
 
 Borden, Inc.,
 
 450 S.E.2d 589, 596 (S.C. 1994) (quoting Stephen R Befort,
 
 Employee Handbooks and the Legal Effect of Disclaimers,
 
 13 Indus. Rel. L. J. 326, 375-76 (1991-92)) in recognizing that courts may resolve such issues as a matter of law when “ ‘the handbook statements and the disclaimer, taken together, establish beyond any doubt tha[t] an enforceable promise either does or does not exist’ ”).
 

 [43]
 

 Appellants assert, as a public policy concern, that dealers both provide the services for which tips are given and incur the risk of receiving little or no tips. Based on this purported public policy and on equity principles, they urge this court to recognize some means of remedying what they perceive as an improper redistribution of the dealers’ tips. Since appellants have an administrative remedy to address their concerns, as explained above, we conclude that appellants’ argument lacks merit and decline to further address this issue.
 

 [44]
 

 Miller v. Jones,
 
 114 Nev. 1291, 1300, 970 P.2d 571, 577 (1998).
 

 [45]
 

 Bergmann v. Boyce,
 
 109 Nev. 670, 675, 856 P.2d 560, 563 (1993) (explaining that “the fact that the [plaintiffs’] complaint survived a 12(b)(5) motion to dismiss was irrelevant to the trial court’s inquiry as to whether the claims of the complaint were groundless”);
 
 Fountain v. Mojo,
 
 687 P.2d 496, 501 (Colo. Ct. App. 1984) (noting that claims are groundless if the allegations in the complaint, while sufficient to survive a motion to dismiss for failure to state a claim, “are not supported by any credible evidence at trial” (internal quotations omitted)).
 

 [46]
 

 NRS 18.010(2)(b).
 

 [47]
 

 See Cotter
 
 v.
 
 Desert Palace, Inc.,
 
 880 F.2d 1142 (9th Cir. 1989);
 
 supra
 
 note 41.
 

 [48]
 

 See Key Bank v. Donnels,
 
 106 Nev. 49, 53, 787 P.2d 382, 385 (1990) (concluding that it was an abuse of discretion to award attorney fees under NRS 18.010(2)(b), when the relevant law “was not free from doubt” and the complaint “presented complex legal questions concerning statutory interpretation and legislative intent, raised on reasonable grounds”).