FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

OCT 28 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

CITY OF RENO,

        Plaintiff-Appellant,

 v.

NETFLIX, INC.; HULU, LLC,

        Defendants-Appellees.

No.   21-16560

D.C. No.
3:20-cv-00499-MMD-WGC

OPINION

Appeal from the United States District Court
for the District of Nevada
Miranda M. Du, Chief District Judge, Presiding

Argued and Submitted September 19, 2022
San Francisco, California

Before:  Susan P. Graber, Michelle T. Friedland, and Lucy H. Koh, Circuit Judges.

Per Curiam Opinion

# SUMMARY[*]

## Nevada Law / Declaratory Judgment Act

The panel affirmed the district court's dismissal for failure to state a claim of the City of Reno's complaint alleging that Netflix, Inc. and Hulu, LLC failed to pay franchise fees for the video streaming services they provide.

Reno's complaint sought damages and declaratory relief under Nevada's Video Service Law ("VSL") and the federal Declaratory Judgment Act, respectively. The panel affirmed the dismissal because the VSL does not provide a private right of action and the Declaratory Judgment Act provides an affirmative remedy only when a cause of action otherwise existed.

Specifically, the panel first addressed the VSL. The VSL does not expressly create a private right of action for cities to sue for unpaid franchise fees. The test under Nevada law for whether a statute creates an implied right of action is set forth in *Baldonado v. Wynn Las Vegas, LLC*, 194 P.3d 96 (Nev. 2008). The panel held that all three *Baldonado* factors weigh against recognition of an implied right of action here. The VSL's express provisions for enforcement by the Nevada Attorney General and the Consumer's Advocate in the Office of Attorney General strongly suggest that the legislative scheme does not include other rights of action. The VSL does not clearly confer a special benefit on local governments. Finally, nothing in the legislative history suggested an intent to permit a private right of action. The panel concluded that under *Baldonado*, the VSL does not confer a right of action on Reno.

Concerning the federal Declaratory Judgment Act, the panel held that it does not provide a cause of action when a party, such as Reno, lacks a cause of action under a separate statute and seeks to use the Act to obtain affirmative relief. Here, Reno's suit was offensive, not defensive, and Reno lacked an independent cause of action, so the Declaratory Judgment Act provided no basis for relief.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

# COUNSEL

Jason H. Kim (argued), Schneider Wallace Cottrell Konecky LLP, Emeryville, California; Leonard Stone, Shook & Stone CHTD, Reno, Nevada; for Plaintiff-Appellant.

Robert C. Collins (argued) and Mary R. Alexander, Latham & Watkins LLP, Chicago, Illinois; Gregory G. Garre, Jean A. Pawlow, and Peter E. Davis, Latham & Watkins LLP, Washington, D.C.; Michael A. Hale, Latham & Watkins LLP, Los Angeles, California; Rew R. Goodenow, Parsons Behle & Latimer, Reno Nevada; for Defendant-Appellee Netflix, INC.

Victor Jih (argued) and Russell L. Kostelak, Wilson Sonsini Goodrich & Rosati, Los Angeles, California; Eric T. Kohan, Wilson Sonsini Goodrich & Rosati, Palo Alto, California; John K. Gallagher and Patrick H. Gallagher, Guild Gallagher & Fuller Ltd., Reno, Nevada; Praatika Prasad, Wilson Sonsini Goodrich & Rosati, New York, New York; for Defendant-Appellee HULU, LLC.

Steven M. Berezney and Garrett R. Broshuis, Korein Tillery LLC, St. Louis, Missouri; for Amici Curiae, City of Creve Coeur, Gwinnett County, City of Brookhaven, and Unified Government of Athens-Clarke County.

John P. Jett, Ava J. Conger, and K. Bradford Sears, Kilpatrick Townsend & Stockton LLP, Atlanta, Georgia; Adam H. Charnes, Kilpatrick Townsend & Stockton LLP, Dallas, Texas; for Amicus Curiae DIRECTV, LLC.

Jared R. Butcher, Crosscastle PLLC, Washington, D.C.; Pantelis Michalopoulos and Matthew R. Friedman, Steptoe & Johnson LLP, Washington, D.C.; for Amici Curiae Dish Network LLC and Sling TV LLC.

PER CURIAM:

Plaintiff City of Reno appeals the dismissal for failure to state a claim of its complaint alleging that Defendants Netflix, Inc. and Hulu, LLC failed to pay franchise fees for the video streaming services they provide. Reno's complaint seeks damages and declaratory relief under Nevada's Video Service Law ("VSL"), Nev. Rev. Stat. § 711.020 *et seq.*, and the federal Declaratory Judgment Act, 28 U.S.C. § 2201, respectively. Because the VSL does not provide a private right of action and the Declaratory Judgment Act provides an affirmative remedy only when a cause of action otherwise exists, we affirm.

## I.

## A.

Historically, cable operators have paid franchise fees to state and local governments in exchange for the use of public rights-of-way. *Comcast of Sacramento I, LLC v. Sacramento Metro. Cable Television Comm'n*, 923 F.3d 1163, 1165 (9th Cir. 2019). Before 2007, each local government in Nevada "ha[d] the authority to grant local franchises for the operation of a community antenna or cable television system within its jurisdiction." J. Assemb. Nev., 74th Sess., at 1711 (Nev., Apr. 20, 2007). In 2007, however, the Nevada legislature passed the VSL, "repeal[ing] the existing statutory scheme of regulating video service through

local franchises and replac[ing] it with a statutory scheme . . . intended to promote more competition in the market for such service." *Id.*

The VSL requires each "video service provider" to "obtain[] a certificate of authority" from the Secretary of State. Nev. Rev. Stat. § 711.470. A certificate of authority "is a state-issued franchise granting the holder of the certificate with the authority to . . . [p]rovide video service in each service area designated in the application and affidavit filed with the Secretary of State." Nev. Rev. Stat. § 711.510(2). Although the VSL preempts most local regulation of the provision of video service, Nev. Rev. Stat. § 711.400, it allows local governments to "manage the use of any public right-of-way or highway by video service providers," including "[i]nspect[ing] the construction, installation, maintenance or repair work performed on such facilities," Nev. Rev. Stat. § 711.640(2), (3)(b), and it permits them to impose franchise fees that do not exceed five percent of a video service provider's gross annual revenue from subscribers within the local government's jurisdiction, Nev. Rev. Stat. § 711.670(3).

Under the VSL, "[a]ny action to recover a disputed underpayment of a franchise fee from a video service provider must be commenced and prosecuted by the Attorney General on behalf of the affected local governments." Nev. Rev. Stat. § 711.680(4). In addition, "[a] video service provider or a local government may file with the Bureau of Consumer Protection [in the Office of the Attorney

3

General] a written complaint alleging a violation of" the VSL; upon filing of such a complaint, "the Consumer's Advocate [of the Bureau of Consumer Protection] may commence in a district court an action to enforce the provisions of [the VSL] and to seek equitable or declaratory relief." Nev. Rev. Stat. § 711.850(1), (2).

**B.**

Reno filed a complaint in the United States District Court for the District of Nevada against Netflix and Hulu[1] seeking to represent a class of "[a]ll Nevada cities and counties in which one or more of the Defendants has provided video service." Reno alleged that Netflix and Hulu "provide video service, and are video service providers" under the VSL, and that they therefore must pay franchise fees. For Netflix's and Hulu's alleged failures to pay franchise fees, Reno sought damages in an amount to be determined at trial. Reno further sought a declaration from the court under the Declaratory Judgment Act that Netflix and Hulu are covered by the VSL and were required to receive certificates of authority and pay franchise fees to Reno and all other class members.

Netflix and Hulu each filed a motion to dismiss pursuant to Rule 12(b)(6). The district court granted both motions, holding that Defendants do not provide "video services" as defined in the statute. Accordingly, the court held that

---

[1] Neither Netflix nor Hulu is a citizen of Nevada, and Reno sought more than $75,000, so the district court had diversity jurisdiction. 28 U.S.C. § 1332.

Defendants are not subject to the franchise fee requirement.  The court held, in the alternative, that the complaint failed because Reno lacked a private right of action under the VSL.[2]  Reno timely appealed.

## II.

We review de novo an order granting a motion to dismiss for failure to state a claim.  *Palm v. L.A. Dep't of Water & Power*, 889 F.3d 1081, 1085 (9th Cir. 2018).  In interpreting state law, "we are bound to follow the decisions of the state's highest court."  *Paulson v. City of San Diego*, 294 F.3d 1124, 1128 (9th Cir. 2002) (en banc).

## III.

We need not address the parties' dispute over the meaning of "video service provider" under the VSL because it is clear that Reno lacks a cause of action under both the VSL and the Declaratory Judgment Act.

---

[2] Because Reno did not defend against dismissal on the basis that the Declaratory Judgment Act provides an independent right of action, the district court did not address that argument.  Although we "generally will not consider arguments raised for the first time on appeal," we "have discretion to do so."  *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1213 (9th Cir. 2020) (quotation marks omitted).  We have exercised such discretion when "the issue presented is a pure question of law and the opposing party will suffer no prejudice as a result of the failure to raise the issue in the trial court."  *Id.* at 1214 (quotation marks omitted).  Whether the Declaratory Judgment Act provides an independent right of action is a pure question of law, and because we ultimately affirm the district court's judgment in Netflix's and Hulu's favor, there is no risk that they will suffer prejudice.  We therefore exercise our discretion to forgive Reno's forfeiture of this issue.

5

## A.

As Reno acknowledges, the VSL does not expressly create a private right of action for cities to sue for unpaid franchise fees. The test under Nevada law for whether a statute creates an implied right of action is set forth in *Baldonado v. Wynn Las Vegas, LLC*, 194 P.3d 96 (Nev. 2008). As the Nevada Supreme Court explained, in the absence of clear statutory text, Nevada courts "examine the entire statutory scheme, reason, and public policy" to determine the Legislature's intent, considering the following factors: "(1) whether the plaintiffs are of the class for whose [special] benefit the statute was enacted; (2) whether the legislative history indicates any intention to create or to deny a private remedy; and (3) whether implying such a remedy is consistent with the underlying purposes of the legislative [sch]eme." *Id.* at 101 (quotation marks omitted) (second alteration in original).

The third *Baldonado* factor weighs strongly against implying a private right of action. The VSL's express provisions for enforcement by the Nevada Attorney General and the Consumer's Advocate in the Office of the Attorney General, Nev. Rev. Stat. §§ 711.680(4), 711.850, strongly suggest that the legislative scheme does not include other rights of action. *See Harvey v. Nevada*, 473 P.3d 1015, 1019 (Nev. 2020) (observing that Nevada courts follow the maxim in interpreting statutes that "the expression of one thing is the exclusion of another" (quotation

6

marks omitted)).  In vesting enforcement of the VSL in state agencies, the Legislature seems to have deprived local governments of enforcement powers intentionally.  The Nevada Supreme Court reasoned similarly in *Baldonado* when holding that there was no implied right of action because the statutory scheme contemplated enforcement of the provisions at issue by an administrative official and created an adequate administrative remedy.  194 P.3d at 102.

The first two factors likewise weigh against the recognition of an implied right of action here.  The VSL does not clearly confer a special benefit on local governments.  The right to collect franchise fees predated the VSL, so it is not clear that the Legislature "intended to confer a right on [local governments] as a class."  *Id.* at 101 n.12.  Finally, nothing in the legislative history suggests an intent to permit a private right of action.  To the extent that the legislative history is informative, it confirms that the Legislature intended to "limit[] the regulatory powers of local governments regarding video service providers."  J. Assemb. Nev., 74th Sess., at 1711 (Nev., Apr. 20, 2007).

Under *Baldonado*, the VSL does not confer a right of action on Reno.

### B.

The Declaratory Judgment Act does not provide a cause of action when a party, such as Reno, lacks a cause of action under a separate statute and seeks to use the Act to obtain affirmative relief.  The availability of relief under the

7

Declaratory Judgment Act "presupposes the existence of a judicially remediable right." *Schilling v. Rogers*, 363 U.S. 666, 677 (1960); *see also Republic of Marshall Islands v. United States*, 865 F.3d 1187, 1199 n.10 (9th Cir. 2017). We agree with our sister circuits that have considered the issue that the Declaratory Judgment Act does not provide an affirmative cause of action where none otherwise exists. *See Chevron Corp. v. Naranjo*, 667 F.3d 232, 244–45 (2d Cir. 2012) ("[T]he DJA . . . does not create an independent cause of action." (quotation marks omitted)); *Malhan v. Sec. U.S. Dep't of State*, 938 F.3d 453, 457 n.3 (3d Cir. 2019) ("[T]he Declaratory Judgment Act is procedural only and presupposes the existence of a judicially remediable right. It creates a remedy, not rights." (quotation marks and citations omitted)); *Okpalobi v. Foster*, 244 F.3d 405, 423 n.31 (5th Cir. 2001) (en banc) ("[T]he law makes clear that—although the Declaratory Judgment Act provides a *remedy* different from an injunction—it does not provide an additional cause of action with respect to the underlying claim."); *Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011) ("[T]he plaintiffs have not alleged a cognizable cause of action and therefore have no basis upon which to seek declaratory relief. Nor does the Declaratory Judgment Act . . . provide a cause of action."); *see also Davis v. United States*, 499 F.3d 590, 594 (6th Cir. 2007) ("[Section] 2201 does not create an independent cause of action."); *Hanson v. Wyatt*, 552 F.3d 1148, 1157 (10th Cir. 2008) (declining to recognize a private

right of action under the Declaratory Judgment Act).

A plaintiff's inability to rely on the Declaratory Judgment Act to obtain affirmative relief where no cause of action otherwise exists contrasts with the well-established availability of the Act for defensive use against anticipated claims. *See Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1322 (9th Cir. 1998) (observing that, "[f]requently, the point of a declaratory action is to assert a defense anticipatorily"). A potential defendant may preempt a suit by a potential plaintiff—the latter of whom could sue pursuant to an independent cause of action—and seek a declaration that the potential plaintiff's claim would fail. For example, a potential defendant in a patent infringement suit may proactively seek a declaratory judgment of non-infringement before the potential plaintiff asserts a cause of action under 35 U.S.C. § 281, which grants a patentee a remedy for patent infringement. *See, e.g.*, *Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*, 571 U.S. 191, 197–98 (2014). In such a lawsuit, "the operation of the Declaratory Judgment Act [is] only procedural, leaving substantive rights unchanged." *Id.* at 199 (quotation marks and citations omitted). The potential defendant in effect borrows the underlying cause of action that would be available to the potential plaintiff. *See Shell Gulf of Mexico Inc. v. Ctr. for Biological Diversity, Inc.*, 771 F.3d 632, 636 (9th Cir. 2014) (explaining that, in evaluating a "request for declaratory relief, courts examine both the persons who can assert rights under that law and those

9

who have obligations under it," and noting that "it is the underlying cause of action of the defendant against the plaintiff that is actually litigated") (citing *Collin Cnty., Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 171 (5th Cir. 1990)).

Here, Reno's suit is offensive, not defensive, and Reno lacks an independent cause of action, so the Declaratory Judgment Act provides no basis for relief.

**AFFIRMED.**